127 F.3d 496
 54 Soc.Sec.Rep.Ser. 309, Medicare & Medicaid Guide
P 45,695
MICHIGAN ASSOCIATION OF HOMES AND SERVICES FOR THE AGING,
INC., a Michigan nonprofit corporation, Plaintiff-Appellant,
v.
Donna E. SHALALA, in her capacity as Secretary of Health &
Human Services; Anthony J. Tirone, in his capacity as
Director, Office of Survey and Certification, Health
Standards and Quality Bureau, of the Health Care Financing
Administration, Defendants-Appellees.
 No. 96-1833.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 24, 1997.
Decided Oct. 7, 1997.
Rehearing and Suggestion for Rehearing En Banc Denied Dec. 17, 1997.
 
 Richard J. Landau (briefed), Dykema Gossett, Ann Arbor, MI, Mark H. Gallant (argued and briefed), Cozen & O'Connor, Philadelphia, PA, for Plaintiff-Appellant.
 Barbara C. Biddle (briefed), U.S. Department of Justice, Appellate Staff, Civil Division, Kathleen M. Mueller (argued and briefed), U.S. Department of Justice, Civil Division, Washington, DC, Mary S. Rigdon (briefed), Asst. U.S. Attorney, Office of the U.S. Attorney, Detroit, MI, for Defendants-Appellees.
 Laurie J. Michelson (briefed), Butzel Long, Detroit, MI, Malcolm J. Harkins (briefed), Laura J. Oberbroeckling (briefed), Proskauer, Rose, Goetz & Mendelsohn, Washington, DC, James E. Stewart (briefed), Butzel Long, Ann Arbor, MI, for Amicus Curiae.
 Before: MERRITT, RYAN, and GIBSON,* Circuit Judges.
 MERRITT, Circuit Judge.
 
 
 1
 An association of Michigan nursing homes brings a facial challenge to Medicare and Medicaid regulations and the defendants' policies and practices regarding nursing home examinations, certification, administration and enforcement and appeal. These regulations and policies implement the Omnibus Budget Reconciliation Act of 1987, which sought to reform the nursing home industry in response to class action litigation and studies critical of the industry.
 
 
 2
 In a comprehensive opinion, District Judge Edmunds dismissed the suit for lack of subject matter jurisdiction, concluding that the Association must exhaust its administrative remedies before pursuing an action in federal court. The Medicare Act, 42 U.S.C. §§ 1395cc(h)(1) and 1395ii, incorporates by reference the judicial review provisions for old age and disability claims under the Social Security Act. These provisions, 42 U.S.C. §§ 405(g) and (h), allow for judicial review "after any final decision of the Secretary" and disallow judicial review "except as herein provided." Section 405(h) then expressly disallows judicial review of administrative action under the general provisions supporting federal question jurisdiction found in 28 U.S.C. §§ 1331 and 1346. The courts have read Section 405(g) to require presentment of claims to the Secretary and exhaustion of administrative remedies, as in social security cases. The question before us is whether we should make an exception to the presentment and exhaustion of remedies requirements for this systemic, frontal attack on the regulatory scheme developed under the 1987 Act.
 
 
 3
 The plaintiff nursing home group argues that its case comes within the exception to the exhaustion requirement that the Supreme Court recognized in Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986), and asserts that this exception includes general, systemic challenges to administrative rules, procedures, practices and customs used by the agency to evaluate nursing home care. It claims that it may bypass the restrictions on judicial review found in § 405(g) and (h) by attacking such agency policies generally.
 
 
 4
 We agree with the Court below that the plaintiff nursing homes must comply with the federal statutes requiring exhaustion of administrative remedies before coming to federal court.
 
 I.
 
 5
 The Michigan Association of Homes and Services for the Aging's members provide nursing home services under both the Medicare and Medicaid programs. The federal government funds the Medicare program, and administers it through the Department of Health and Human Services. The federal and state governments jointly fund the Medicaid program. Providers who participate in each program must comply with statutory requirements and with federal regulations implementing them.
 
 
 6
 The regulations require regular provider surveys or inspections which are the subject of the current litigation. State teams perform certification surveys for both Medicare and Medicaid. The federal Health Care Financing Administration sets guidelines and trains the state survey teams, and can perform its own "look behind" surveys. Should these surveys reveal deficiencies, either federal or state agencies may seek and implement remedies.
 
 
 7
 The same set of federal regulations governs certification under both Medicare and Medicaid. There are twelve different outcomes available under the survey regulations. The least serious three represent a finding of "substantial compliance" and result in no sanction. The other nine represent a finding of noncompliance and may result in sanctions. The most serious six outcomes represent a finding of "substandard quality of care" and carry a more severe mix of remedies. Once regulators determine that a facility is not in substantial compliance, federal and state agencies have some discretion in imposing and choosing remedies.
 
 
 8
 In carrying out the goal of Congress' to prevent backsliding nursing homes from continuing to operate within a cycle of noncompliance and then temporary compliance through short term plans of correction, the regulations authorize a broad range of remedies. Agencies may (1) disclose a finding of substandard quality of care to referring physicians and licensing boards, (2) place a ban on nurse aid training and competency evaluations, (3) direct a plan of correction, (4) initiate state monitoring through frequent inspections, (5) impose temporary agency management, (6) place a ban on payment for new admissions, (7) impose civil money penalties, and (8) terminate a provider from the Medicare and Medicaid programs. See 42 C.F.R. §§ 488.325(g),(h), 483.151, 488.406; see also 42 U.S.C. § 1395i-3(h)(2)(B).
 
 
 9
 These remedies are not available until a finding of noncompliance is made and they are appealable administratively. The imposition of state monitoring, which is not appealable administratively, is an exception. 42 C.F.R. § 498.3(b)(12). The loss of approval for a nurse aide training program would seem to be another exception, but under 42 C.F.R. § 483.151 would apparently only flow from the imposition of other remedies, which may be appealed. The regulations allow an administrative appeal of the initial determination of whether a provider is in substantial compliance; they do not allow an administrative appeal of the regulators' choice of remedy.
 
 
 10
 The Association challenges the regulatory scheme on four basic grounds. (1) It contends that the regulations are vague and hence violate the Due Process Clause. In particular, it argues that "substantial compliance" and "substandard quality of care," the terms that determine whether a facility is subject to sanctions and what sanction it will receive, are inadequately defined. See 42 C.F.R. § 488.301. According to the Association's complaint, these terms cannot be, and are not being, applied consistently. (2) The Association argues that the defendants have failed to carry out a statutory mandate to "measure and reduce inconsistency" of state surveys and enforcement. Though the government has undertaken fairly extensive training, has developed State Operations Manuals, and continues to update its recommendations to the states, the Association presents statistics that purportedly suggest that survey results vary substantially from state to state. (3) The Association attacks these same State Operations Manuals, training materials, and other communications between the Health Care Financing Administration and the state agencies as violative of the Administrative Procedure Act's notice and comment provisions. The government responds that these materials are interpretive only, and do not add to the substance of the regulations and statute. (4) The Association argues that the scheme violates procedural due process. It notes that the regulations do not allow administrative appeal of the regulators' choice of remedy. Moreover, it contends that due process requires an opportunity to correct a deficiency before sanctions are imposed.II.
 
 
 11
 The issue before us is whether a federal district court has jurisdiction over a facial statutory and constitutional challenge to Medicare and Medicaid survey regulations and other materials despite the fact that the plaintiffs have not presented their challenge to the agency on a case-by-case basis or exhausted their administrative remedies and judicial remedies. A provision of the Social Security Act, 42 U.S.C. § 405(h), limits the circumstances under which courts may review suits arising under the Act:
 
 
 12
 (h) Finality of Secretary's decision. The findings and decision of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.
 
 
 13
 42 U.S.C. § 405(h) (emphasis added). This language is incorporated into the Medicare Act by 42 U.S.C. § 1395ii and applies to proceedings involving individual facilities through 42 U.S.C. § 1395cc(h)(1).[1] The provision's "except as herein provided" language refers to section 405(g), which sets forth the procedures required for judicial review to be available. Courts have interpreted section 405(g) to provide for (1) a nonwaivable requirement of presentation of any claim to the Secretary, and (2) a requirement of exhaustion of administrative review, which the Secretary may waive. See Heckler v. Ringer, 466 U.S. 602, 617, 104 S.Ct. 2013, 2022-23, 80 L.Ed.2d 622 (1984). Notably, section 405(g) is incorporated into the Medicaid Act. 42 U.S.C. § 1396i(b)(2) (formerly § 1396i(c)(2)).
 
 A.
 
 14
 The current plaintiffs have not satisfied either the presentment prong or the exhaustion prong,[2] but argue that the provision should not apply to their claims for several reasons. First, though they concede that a claim that arises solely under the Medicare Act is subject to the statutory limitation, they argue that federal question jurisdiction is appropriate because their claims also "arise under" the Fifth Amendment's Due Process Clause and the Administrative Procedure Act. The Supreme Court's decision in Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), forecloses this approach. The Salfi Court held that the fact that a plaintiff's claim arises under the Constitution as well as the Social Security Act does not provide a way around the requirements of sections 405(h) and 405(g). Id. at 760-61, 95 S.Ct. at 2464-65. This logic extends to the Association's Administrative Procedure Act claim as well. So long as the plaintiff's standing and substantive bases for assertion of constitutional or statutory claims still arise under the Medicare Act, section 405(h) is the exclusive basis for subject matter jurisdiction. Id; Heckler v. Ringer, 466 U.S. 602, 622, 104 S.Ct. 2013, 2025, 80 L.Ed.2d 622 (1984) ("Ringer's claim may well 'arise under' the APA in the same sense that Salfi's claim arises under the Constitution, but we held in Salfi that the constitutional claim was nonetheless barred by § 405(h).").
 
 
 15
 The Association and an amicus attempt to avoid this problem by arguing that the statute's restrictive language applies only to individual claims for benefits or constitutional challenges that are intertwined with claims for benefits. This facial challenge, they argue, should be treated differently. We disagree. In Heckler v. Ringer, the Court noted that plaintiff Ringer's situation differed from that of the other plaintiffs in "one arguably significant way":
 
 
 16
 Because he has not yet had the operation and thus has no reimbursable expenses, it can be argued that Ringer does not yet have a "claim" to present to the Secretary and thus that he does not have a "claim arising under" the Medicare Act so as to be subject to § 405(h)'s bar to federal-question jurisdiction. The argument is not that Ringer's claim does not "arise under" the Medicare Act as we interpreted that term in Weinberger v. Salfi; it is rather that it has not yet blossomed into a "claim" cognizable under § 405(g).
 
 
 17
 466 U.S. at 621, 104 S.Ct. at 2025. The Court found this argument "superficially appealing but ultimately unavailing." Id. In essence, Ringer was asking the courts to force the Secretary to change the applicable rules without first presenting the issue to the Secretary on a case-by-case basis. The Association makes the same argument in this case. Like Ringer, it seeks to change the applicable rules without presenting them to the Secretary as the statute requires.
 
 
 18
 The purposes of exhaustion, as articulated in Weinberger v. Salfi, would be undermined by allowing the Association to avoid presenting its specific claims to the Secretary. The Salfi Court pointed out that exhaustion is required
 
 
 19
 as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.
 
 
 20
 Salfi, 422 U.S. at 765, 95 S.Ct. at 2467. It is true that the Association's suit purports to challenge the constitutionality of the agency's regulations and other materials on their face. Its challenge relates, however, to how these materials operate procedurally, procedures that the Association itself complains are difficult to pin down. For instance, though the Association contends that the government has not taken adequate steps to reduce inconsistency, it also attacks the government's ongoing, informal attempts to produce consistency by training state surveyors and disseminating information to the states. The Association paints a picture of a system that is still struggling to implement a radical legislative change in direction, but the Association demands to be heard before the system has fully implemented the change and applied it to specific cases. Under these circumstances, requiring exhaustion will allow the parties to compile a record that will place the Association's procedural claims in a clearer light. In such circumstances, courts need an administrative record to review. They function best on a case-by-case basis, leaving broad legislative attacks to be determined by Congress.
 
 
 21
 Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986) and McNary v. Haitian Refugee Center, Inc., 498 U.S. 479, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991) are not to the contrary. We read these cases to carve out an exception to the limitations of jurisdictional provisions similar to section 405(h) in cases of futility where plaintiffs would not otherwise be able to obtain judicial review of their claims, whatever the nature of these claims. For instance, the Haitian Refugee Center Court distinguished Ringer on the ground that "unlike in [Ringer ], if not allowed to pursue their claims in the District Court, respondents would not as a practical matter be able to obtain meaningful judicial review of their application denials or of their objections to INS procedures...." Haitian Refugee Center, 498 U.S. at 496, 111 S.Ct. at 898. In contrast, we point out in Part II.B. below that the Association's members have a meaningful opportunity for judicial review.
 
 
 22
 We do not interpret these cases to establish a broad exception for facial constitutional and statutory challenges to agency administration as opposed to individual challenges that are intertwined with claims for benefits. To the extent the Haitian Refugee Center opinion seems to suggest such a distinction, it rests on statutory language of the Immigration and Nationality Act that restricts review of "a determination respecting an application for adjustment of status," 8 U.S.C. § 1160(e), language that is much more limited than that of section 405(h), which restricts any "action ... to recover on any claim" arising under the Medicare Act.
 
 B.
 
 23
 The Association argues that even if section 405(h) would ordinarily preclude subject matter jurisdiction, the exception to section 405(h) articulated in Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986), should apply in these circumstances. Courts have interpreted Bowen to allow federal question jurisdiction over statutory and constitutional challenges to regulations promulgated by the Secretary under the Medicare Act when there is no other avenue of judicial review. See Westchester Management Corp. v. United States Dep't of Health and Human Servs., 948 F.2d 279, 282 (6th Cir.1991); see also Bowen, 476 U.S. at 678, 106 S.Ct. at 2140.
 
 
 24
 The Association argues that there is no avenue for judicial review of most of their complaints for several reasons. First, the Association contends that § 1395cc(h)(1) provides only for an administrative hearing and subsequent judicial review for a facility whose Medicare provider agreement has been terminated.[3] The sanctions about which they complain fall short of this extreme remedy, so it concludes that review is unavailable for these lesser, alternative sanctions. The Association's restrictive reading of the statute is clearly incorrect. The government concedes that "the Medicare Act clearly envisions that nursing facilities may appeal the imposition of alternative remedies." Appellees' br. at 32. It points to the legislative history, see H.R. Conf. Rep. No. 100-495, at 718 (1987), reprinted in 1987 U.S.C.C.A.N. 2313-1245, 2313-1464, and the statute's authorization of alternative remedies "during the pendency of any hearing." 42 U.S.C. § 1395i-3(h)(5). Further, the government's own regulations provide for administrative review of a finding of noncompliance that results in the imposition of a remedy, see 42 C.F.R. § 498.3(b)(12), and review of any hearing decision with which a provider is dissatisfied, see 42 C.F.R. § 498.5(c). Finally, the Association's interpretation would require exhaustion of administrative review when major sanctions such as termination are imposed, but would allow immediate court challenges to lesser, more common remedies. It is unlikely that Congress intended this anomalous result.
 
 
 25
 Second, the Association argues that the Bowen exception should apply because the government's choice of remedy is not reviewable under the regulations, once a finding of noncompliance is made. See 42 C.F.R. § 431.153(b). The regulations do allow for considerable discretion in determining the level of sanction to be applied. While this lack of review may support the Association's contention that the regulations violate the Constitution's procedural safeguards, the question before us is only whether judicial review is available for this contention. Administrative review--and so long as both prongs of sections 405(g) and (h) are fulfilled, judicial review--is available any time a sanction is actually imposed. A nursing home challenging the imposition of a sanction in federal court could raise the Association's constitutional claims simultaneously. In other words, once a nursing home is found not in compliance it is entitled to review of that determination, and could obtain review in court of the constitutional and statutory claims that the Association brings in this case, including claims that the appeals procedures themselves offend due process. Thus, our decision to apply section 405(h) does not eliminate avenues of judicial review, and the Bowen exception does not apply.
 
 
 26
 Third, the Association contends that some of the lesser, alternative remedies are imposed without judicial review as a purely practical matter. Though the facilities could challenge the imposition of a remedy once it is applied, see Appellant's br. at 41, most would prefer to submit a plan to correct the deficiencies and avoid sanctions. Few of its members, asserts the Association, would choose to fight the imposition of a sanction and incur the costs and reputational damage that would result, even if the determination that led to the sanction would ultimately be overturned. Even minor sanctions, the Association claims, would force many of its members to close their doors. While we acknowledge these practical concerns, they are not dispositive. In Case v. Weinberger, 523 F.2d 602 (2d Cir.1975), the Second Circuit addressed a provider's claim to pre-termination due process. The provider argued that the denial of reimbursements would deal her business a blow from which it would never recover. The court determined, however, that
 
 
 27
 [t]his anticipated damage to [the provider], which is certainly serious, does not compare favorably with the government's interest in the safety of her patients.... We must ... place [the provider's interest in participation] in proper perspective with regard to the health and safety expectations of the patients, which expectations the Secretary has a valid interest in protecting.
 
 
 28
 Id. at 607. In the instant case, the Association's practical concerns do not foreclose judicial review for the purposes of the Bowen exception. In particular, we note that one of the main purposes of the reforms introduced in the Omnibus Budget Reconciliation Act of 1987 was to prevent nursing homes from submitting a plan of correction to avoid sanctions over and over again in the short term, only to slide back into noncompliance--the very behavior that the Association argues its members are privileged to adopt under the Bowen exception. The practical difficulties nursing homes may face under these facts rise to the level of the "Catch-22" the Supreme Court addressed in Haitian Refugee Center. There, aliens wishing to challenge certain Immigration and Naturalization Service procedures would have been required to surrender themselves voluntarily for deportation to ensure review in the courts of appeals of their statuses under an immigration amnesty program. The nursing home's burden here is not this onerous. If the government's surveys are as arbitrary as the Association's counsel contended during oral argument, we are confident that at least one of its members will find a test case worth pursuing through which the Association's constitutional and statutory claims may be heard.
 
 III.
 
 29
 In the alternative, the Association argues that though it is true that its claims arise under the Medicare statute, its claims arise equally--and indeed principally--under the Medicaid statute, which does not incorporate section 405(h). The district court rejected this argument, citing Rhode Island Hospital v. Califano, 585 F.2d 1153 (1st Cir.1978). Even if we were to interpret the Association's claim as arising under the Medicaid Act, the Association would still be required to exhaust its administrative remedies. In Health Equity Resources Urbana, Inc. v. Sullivan, 927 F.2d 963 (7th Cir.1991), the buyer of a nursing home sought to enjoin the termination of the nursing home's Medicaid contract while an administrative proceeding begun before the sale was pending. The new owner argued, like the current plaintiff, that exhaustion of administrative remedies was not required because the Medicaid Act does not incorporate section 405(h). The court held that the new owner was required to exhaust his administrative remedies. Judge Posner wrote:
 
 
 30
 To state our conclusion on jurisdiction very mildly, Health Equity has not presented an adequate reason for bypassing settled machinery for adjudicating challenges to administrative decisions in the health field. And while it is true that 42 U.S.C. § 405(h), which expressly makes section 405(g) the exclusive route for obtaining judicial review of decisions by the Social Security Administration, was not incorporated into the Medicaid statute (as it was into the Medicare statute, 42 U.S.C. § 1395ii), we do not interpret the omission as abrogating the doctrine of exhaustion of remedies in Medicaid cases. The incorporation of section 405(g) can only be understood as a determination to make section 405(g) the route for judicial review of Medicaid determinations, since if it were only a route every provider would avoid it, as Health Equity has tried to do by basing its suit not on section 405(g) but on 28 U.S.C. § 1331....
 
 
 31
 Id. at 967. The Medicaid Act's inclusion of § 405(g) is clear textual support for the proposition that Congress intended the exhaustion of administrative remedies to apply in cases such as the instant one. The similar structures of the two Acts, evasion concerns, and considerations of judicial economy and orderliness support this conclusion as well. See Rhode Island Hospital, 585 F.2d at 1162 ("To so allow [the Medicaid Act] to become the back door into [the Medicare Act], which has barred this case from entrance, would result in an automatic circumvention of the [Medicare programs] administrative machinery when its cost limitations have been adopted by [the Medicaid Act] and the provider, as will usually be the case, furnishes services under both Titles.")
 
 IV.
 
 32
 Finally, the Association argues that even if the district court lacked subject matter jurisdiction, the Association's claims are cognizable under the mandamus statute, 28 U.S.C. § 1651. It is true that on its face section 405(h) limits judicial review only under the federal question jurisdiction statute, 28 U.S.C. § 1331, and the Tort Claims Act, 28 U.S.C. § 1346. This Court has not yet determined whether mandamus jurisdiction, which the statute does not mention, is also precluded. It is not necessary for us to reach this question in the instant case. The Court in Heckler v. Ringer noted that the common-law writ of mandamus, as codified in 28 U.S.C. § 1361, "is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." Heckler v. Ringer, 466 U.S. 602, 616, 104 S.Ct. 2013, 2022, 80 L.Ed.2d 622 (1984). In circumstances such as the instant case, the Bowen exception to Salfi and section 405(h) discussed above overlaps with mandamus' exhaustion requirement and renders mandamus unnecessary. The Association's members may present their claims during judicial review of an agency determination that they were not in substantial compliance. Thus, they have not exhausted their remedies and mandamus review is inappropriate.
 
 Conclusion
 
 33
 Though we hold that the Association's members must present their claims to the Secretary according to section 405(h), we emphasize that we express no opinion on the merits their statutory and constitutional claims. Agencies must, of course, operate within the limits of the Administrative Procedure Act, the enabling act that put them in business, and the procedural safeguards of the Constitution. In this context, however, it is not surprising that broad legislative reforms intended to effect a major change in nursing home certification and enforcement would require serious adjustment on behalf of both the industry and government regulators. We should hardly be surprised that regulated institutions have found standards based on patient outcomes more difficult to implement across large corporate structures than rule-like minimum requirements, or that institutions that formerly avoided sanctions over the short term with plans of correction have had difficulties making more permanent changes to the way they treat residents. Nor should we be surprised that different government surveyors have interpreted these standards in different ways as the reforms are slowly implemented. Yet Congress, faced with serious problems in the nursing home industry, mandated these reforms to protect nursing home residents. The Association may still bring its claims within the limitations of section 405(h).
 
 
 34
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Floyd R. Gibson, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 [1]
 42 U.S.C. § 1395ii provides in pertinent part:
 The provisions of sections 406 and 416(j) of this title, and of subsections (a), (d), (e), (h), (i), (j), (k), and (l ) of section 405 of this title, shall also apply to this subchapter to the same extent as they are applicable with respect to subchapter II of this chapter....
 42 U.S.C § 1395cc(h)(1) provides in pertinent part:
 Except as provided in paragraph (2), an institution or agency dissatisfied with a determination by the Secretary that it is not a provider of services or with a determination described in subsection (b)(2) of this section [which deals with the termination or nonrenewal of a provider agreement] shall be entitled to a hearing thereon by the Secretary (after reasonable notice) to the same extent as is provided in section 405(b) of this title, and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title....
 
 
 [2]
 Because the plaintiffs have not satisfied the first, nonwaivable prong, we do not address those factors under which courts have excused exhaustion of administrative review. See, e.g., Manakee Professional Medical Transfer Service v. Shalala, 71 F.3d 574, 580 (6th Cir.1995); Day v. Shalala, 23 F.3d 1052, 1059 (6th Cir.1994)
 
 
 [3]
 42 U.S.C. § 1395cc(h)(1) grants a hearing and judicial review to an institution or agency "dissatisfied with a determination by the Secretary that it is not a provider of services" or with the termination or nonrenewal of a provider agreement