**ILLINOIS COUNCIL ON LONG TERM CARE INC., Plaintiff–Appellant,**

v.

**Donna E. SHALALA, Secretary of Health and Human Services, et al., Defendants–Appellees.**

No. 97–2315.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 5, 1997.

Decided May 8, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied Aug. 13, 1998.*

* Judge Flaum did not participate in the consideration of the suggestion for rehearing en banc.

Judges Ripple, Manion and Rovner voted to grant rehearing en banc.

Brian E. Neuffer (argued), Neil Holmen, Winston & Strawn, Chicago, IL, for Plaintiff–Appellant.

Thomas P. Walsh, Office of the United States Attorney, Civil Division, Chicago, IL, Kathy M. Mueller, United States Department of Justice, Federal Programs Branch—Civil Division, Washington, DC, Barbara C. Biddle, Jeffrey Clair (argued), Department of Justice, Civil Division, Appellate Section, Washington, DC, for Defendant–Appellee Shalala.

Kathy M. Mueller, United States Department of Justice, Federal Programs Branch—Civil Division, Washington, DC, Barbara C. Biddle, Jeffrey Clair (argued), Department of Justice, Civil Division, Appellate Section, Washington, DC, for Defendant–Appellee Tirone.

James C. O'Connell (argued), Office of the Attorney General, Chicago, IL, for Defendant–Appellee Lumpkin.

Pamela B. Small, Proskauer, Rose, Goetz & Mendelsohn, Washington, DC, Richard M. Esenberg, Kevin J. Clancy, Foley & Lardner, Chicago, IL, Malcolm J. Harkins, Proskauer, Rose, Goetz & Mendelsohn, Washing-

ton, DC, for Amicus Curiae American Health Care Association.

Before EASTERBROOK, DIANE P. WOOD, and EVANS, Circuit Judges.

EASTERBROOK, Circuit Judge.

Nursing homes that want reimbursement under the Medicare or Medicaid programs must comply with regulations specifying minimum health and safety standards. Statutory criteria were enacted in 1987, see 42 U.S.C. § 1395i–3(a) to (d) (Medicare), § 1396r(a) to (d) (Medicaid), but implementing regulations were not issued until 1994, and did not take effect until July 1, 1995. 59 Fed.Reg. 56,116 (1994). An association of nursing homes, the Illinois Council on Long Term Care, tells us that before these new regulations were adopted about 6% of its members had been directed to change their operations in order to meet applicable standards, while more recent inspections have found 70% of nursing homes to be deficient. Regulators attribute this to tougher substantive rules that nursing homes have yet to satisfy; the nursing homes attribute the jump to vague rules that leave too much discretion in the hands of inspection teams.

The Council filed this suit on behalf of its members and asked the court to declare that the new regulations violate the due process clause of the fifth amendment because they are too vague and do not provide adequate opportunities to be heard before financial penalties take effect. The Council also argued that a manual used by inspection teams has the effect of a regulation and therefore could be adopted only after notice-and-comment rulemaking under § 3 of the Administrative Procedure Act, 5 U.S.C. § 553. The Secretary of Health and Human Services, the principal defendant in the case, asked the district court to distinguish between the Medicare and Medicaid aspects of the suit. According to the Secretary, objections to implementation of the Medicare Act are barred by 42 U.S.C. § 1395ii, incorporating 42 U.S.C. § 405(h), which makes an application for benefits (and review of the Secretary's final decision), the sole route to judicial review. None of the Council's members has obtained a final decision, and § 1395ii forbids jumping the gun on legal issues that will be relevant to the administrative decision, the Secretary contended. *See Heckler v. Ringer,* 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984). Although most of the Council's theories are based on the Constitution and the APA rather than any incompatibility between the regulations and the Medicare Act, *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), holds that a claim is subject to the review-channeling provision in § 405(h) when the end in view is receipt of federal payments. Claims under the Medicaid Act should be handled otherwise, the Secretary submitted, because that statute does not incorporate § 405(h) and lacks any comparable restriction. A challenge to Medicaid regulations therefore is proper under 28 U.S.C. § 1331 and 5 U.S.C. § 702—but, the Secretary added, should be dismissed in large measure as unripe. Only the Medicaid providers' APA challenge to the handbook is mete for decision, the Secretary concluded. The district judge accepted the first part of this argument—that § 1395ii postpones review of claims by Medicare providers—but extended it to the entire case, stating: "The issues are the same, the only difference being that the first three counts arise under the Medicaid Act whereas the latter three arise under the Medicare Act. By reaching the merits on the Medicaid claims, this court would effectively resolve the Medicare issues as well. This attempt to back-door the jurisdictional bar of the Medicare Act is impermissible." 1997 WL 158347 at *3, 1997 U.S. Dist. Lexis 3982 at *9–10. After the Council filed its notice of appeal, the sixth circuit reached the same conclusion in an essentially identical case. *Michigan Association of Homes & Services for the Aging, Inc. v. Shalala,* 127 F.3d 496 (6th Cir.1997).

Section 1395ii makes § 405(h) applicable to Medicare cases "to the same extent as" it applies to Social Security disability cases. Section 405(h) provides in part: "No findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the [Secretary], or any officer or employee thereof shall be brought under § 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter." The word "herein" refers to the rest of § 405, and in

particular to § 405(g), which permits judicial review only after a final decision by the Secretary. *Ringer* and *Salfi* treat this language as channeling all claims to benefits through the administrative forum, no matter what legal theory underlies the claim. But *Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 678–81, 106 S.Ct. 2133, 2140–41, 90 L.Ed.2d 623 (1986), holds that § 1395ii does not foreclose Medicare providers' anticipatory challenge to implementing regulations. Bypassing the question whether § 405(h) would prevent such a challenge to a regulation implementing the Social Security disability program, the Court held that § 1395ii addresses only "amount determinations" (476 U.S. at 680, 106 S.Ct. at 2141)—that is, calculations of reimbursements by the fiscal intermediaries that implement the Medicare program—and that "matters which Congress did *not* delegate to private carriers, such as challenges to the validity of the Secretary's instructions and regulations, are cognizable in courts of law." *Ibid.* (emphasis in original).

According to the Secretary, *Michigan Academy* ceased to have any precedential force a few months after it was issued. The Secretary reads *Michigan Academy* as creating an exception to § 1395ii for claims that otherwise could not reach the courts. Shortly after the Court decided *Michigan Academy,* Congress amended the Medicare Act to give providers an avenue to judicial review of amount determinations, 42 U.S.C. § 1395ff(b)(1), thus overturning the result of *United States v. Erika, Inc.,* 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982). Once that occurred, the argument concludes, the basis of *Michigan Academy* disappeared, and with it the Court's holding. The district court, and the sixth circuit in *Michigan Association,* 127 F.3d at 500–01, accepted this line of argument. But if something important happened in 1986, the point has been lost on the Supreme Court, which in 1991 reiterated its conclusion that § 1395ii does not affect regulatory challenges that are detached from any request for reimbursement. *McNary v. Haitian Refugee Center, Inc.,* 498 U.S. 479, 497–98, 111 S.Ct. 888, 898–99, 112 L.Ed.2d 1005 (1991). And it has been lost on us too, for we have since 1986 drawn a distinction between pre-enforcement challenges to Medi-

care regulations (allowed) and requests for reimbursement (postponed until after the Secretary has made a final decision). *E.g., Martin v. Shalala,* 63 F.3d 497, 503–05 (7th Cir.1995); *Bodimetric Health Services, Inc. v. Aetna Life & Casualty,* 903 F.2d 480, 483–87 (7th Cir.1990).

It may well be that the 1986 amendments remove the practical support for the distinction drawn by *Michigan Academy.* The panel in *Martin* said as much. 63 F.3d at 502–03. *Michigan Academy* emphasized, 476 U.S. at 670–73, 106 S.Ct. at 2135–37, the presumption that Congress has allowed some avenue of judicial review, and the Justices read the statutes then in effect with that presumption in mind. Now that Congress has authorized review of amount determinations through § 1395ff(b)(1), that part of *Michigan Academy*'s rationale is gone—the invalidity of regulations would be a good reason for a reviewing court to upset an amount determination. This led the district court to write that "the *Michigan Academy* exception does not apply." Both the Secretary and the district court thus treat the Supreme Court's opinion as an "exception" to a statute—as if the Court claimed the power to treat statutes no differently from the common law, and to make "exceptions" to Acts of Congress based on judicially created presumptions. Cf. Guido Calabresi, *A Common Law for the Age of Statutes* (1982). To the contrary, the Court has disavowed such power. E.g., *Bank of Nova Scotia v. United States,* 487 U.S. 250, 255, 108 S.Ct. 2369, 2373–74, 101 L.Ed.2d 228 (1988). *Michigan Academy* does not say that a presumption of judicial review justifies an "exception" to § 1395ii. It says, rather, that § 1395ii, read in light of its 1972 legislative history, affects only "amount determinations". 476 U.S. at 678–81, 106 S.Ct. at 2140–41. The key language from this perspective is "recover on" in the sentence: "No action against the United States, the [Secretary], or any officer or employee thereof shall be brought under § 1331 or [§] 1346 ... to recover on any claim arising under this subchapter." As the Court read § 1395ii and therefore § 405(h) in *Michigan Academy,* pre-enforcement review of a regulation's validity is not an action to "recover on" a claim, even when per *Salfi* a

constitutional objection to the regulation is a "claim arising under this subchapter."

Neither this critical language from § 405(h) nor the history of § 1395ii changed in 1986. Had Congress written a new statute, we would need to decide what the new language means, rather than what *Michigan Academy* said some bygone language meant. But when Congress amended § 1395ff it left § 1395ii alone. Section 1395ii was amended in 1994 (see § 108(c)(4) of Pub.L. 103–296, 108 Stat. 1485), but that change was designed only to make it clear that a bureaucratic reorganization (the removal of the Commissioner of Social Security from the Department of Health and Human Services) had no substantive effects. The operative language is the same now as it was when *Michigan Academy* came down. The Supreme Court is jealous of its powers and insists that the inferior courts are not authorized to declare the reasoning of its opinions outdated and their holdings passé. See *State Oil Co. v. Khan,* —— U.S. ——, 118 S.Ct. 275, 284, 139 L.Ed.2d 199 (1997); *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 484, 109 S.Ct. 1917, 1921–22, 104 L.Ed.2d 526 (1989); *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.,* 460 U.S. 533, 535, 103 S.Ct. 1343, 1344, 75 L.Ed.2d 260 (1983). Until the Supreme Court tells us that *it* believes that the 1986 amendments require a change of direction with respect to § 1395ii, we are obliged to follow the holding of *Michigan Academy.*

■ Although this conclusion makes it unnecessary to discuss in detail the distinctions between the Medicare and Medicaid programs, the possibility that this case may find its way to a higher tribunal leads us to record our disagreement with the district court's conclusion that challenges to Medicaid regulations are barred whenever the decision has implications for Medicare regulations. The Medicaid Act contains nothing comparable to § 405(h) or § 1395ii. The general federal-question jurisdiction under § 1331 therefore supplies the avenue of judicial review, and it has been understood for a long time that courts are not to invent novel obstacles to the use of this jurisdiction. See *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817, 96 S.Ct.

1236, 1246, 47 L.Ed.2d 483 (1976). We have entertained challenges to Medicaid regulations without hinting that a district court should dismiss the case (effectively abstaining) if a similar problem could arise under the Medicare Act or its regulations. See *Woodstock/Kenosha Health Center v. Schweiker,* 713 F.2d 285, 288–89 (7th Cir. 1983); *Illinois Department of Public Aid v. Schweiker,* 707 F.2d 273 (7th Cir.1983). The district court did not mention these cases; instead it relied on an earlier decision, *Rhode Island Hospital v. Califano,* 585 F.2d 1153, 1162–63 (1st Cir.1978), that is incompatible with the law of this circuit. The Medicare and Medicaid programs have many substantive and procedural differences; it is not as if they were twins, so that a court should struggle to avert the possibility of allowing judicial review at different times or through different mechanisms. Nursing homes that participate in the Medicaid program are not limited to the Medicare procedures. If some nursing homes may litigate on their own, they may litigate through their trade association; we don't see why the fact that other members of the Council have potential Medicare claims should cut off associational representation and compel independent litigation.

Thus we disapprove the sixth circuit's decision in *Michigan Association* across the board, for it is inconsistent with *Woodstock/Kenosha,* and similar cases in this circuit, none of which the sixth circuit cited. *Michigan Association* claimed to follow *Health Equity Resources Urbana, Inc. v. Sullivan,* 927 F.2d 963 (7th Cir.1991), which it read for the proposition that the Medicaid Act's incorporation of 42 U.S.C. § 405(g) via 42 U.S.C. § 1396i(b)(2) is independently sufficient to prevent anticipatory judicial review of regulations. Any interpretative exercise that makes multiple sections of the United States Code meaningless—and this one would dispense with at least § 405(h) and § 1395ii—and requires a federal court to renounce its own jurisdiction into the bargain, is more than a little suspect. It is not at all what our opinion in *Health Equity Resources* was about. That Medicaid provider commenced an administrative proceeding under § 405(g) and § 1396i(c)(2) to contest an "amount determination" by a fiscal interme-

diary. Dissatisfied with how things were going, the provider attempted to initiate a suit before the administrative proceeding was over. Applying standard doctrines of exhaustion of administrative remedies, *Health Equity Resources* nixed the maneuver. We did not hold then, and decline to hold now, that a Medicaid provider is forbidden to bring a pre-enforcement challenge to a Medicaid regulation under § 1331.

■ It follows from what we have said so far that the district court should have resolved on the merits the Council's argument that the manual is a regulation for which notice-and-comment rulemaking was essential. For the most part, however, the Council's victory on the jurisdictional issue does it little good. In order to take advantage of *Michigan Academy,* the Council made its claim entirely abstract. It does not object to any evaluation of any particular nursing home or contend that a single one of its members has been ill used. Such arguments would have played into the Secretary's hands by making it easier to contend that this is just a disguised effort to contest "amount determinations" and therefore postponed (by § 1395ii and *Ringer*) until after the administrative process has run its course. But by making the claim so abstract, the Council set up the Secretary's contention that the suit is unripe.

■ One aspect of the Council's attack is assuredly premature. The nursing homes contend that the regulations are void for vagueness. But this is not a first amendment case. It is about conditions attached to a federal subsidy; none of any nursing home's substantive constitutional rights is in jeopardy. That makes it impossible to mount a "facial" attack on the rules. If a rule "implicates no constitutionally protected conduct, [the court] should uphold the challenge only if the enactment is impermissibly vague in all of its applications. A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law." *Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494–95, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982) (footnote

omitted). In other words, "vagueness challenges ... which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975). Having crafted a litigation strategy to avoid § 405(h) and § 1395ii, the Council finds itself with no "facts of the case at hand" and therefore without any hope of success on a claim that the regulations are unconstitutionally vague. It is indeed hard to see how regulations under a social welfare program *could* be condemned out of hand as Delphian. Agencies may use ambiguous standards that acquire meaning through the process of application, just as the common law does. See, e.g., *Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); *NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 294, 94 S.Ct. 1757, 1771–72, 40 L.Ed.2d 134 (1974); *CSC v. Letter Carriers,* 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973). An industry subject to a battery of new regulations cannot ask for an all-at-once review but must wait until the agency has worked through the process of adding detail in administrative adjudication. See *Machinists Union v. NLRB,* 133 F.3d 1012, 1015–17 (7th Cir.1998).

To the extent the Council complains that the manual and accompanying survey forms are unauthorized by the 1987 legislation, these claims may be mooted by a decision on the APA theory. Other aspects of this line of argument may be inappropriate for pre-enforcement review given the standards of *Babbitt v. United Farm Workers,* 442 U.S. 289, 298–99, 99 S.Ct. 2301, 2308–09, 60 L.Ed.2d 895 (1979); *Gardner v. Toilet Goods Association,* 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967); and *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). For example, the Council insists that the regulations and manual will not assure that remedies are consistently applied to similarly situated nursing homes, which 42 U.S.C. § 1395i–3(g)(2)(D) requires the Secretary to do. But how could a court determine, without examining how the system works in practice, whether remedies have been applied consistently? Some other arguments based on the 1987 statute do not appear to present situations in which lack of

pre-enforcement review will put the plaintiffs to costly choices—and if anticipatory review is not essential to avoid hardship, then courts should defer review, in order to obtain the benefits of the more focused presentation made possible by a concrete application of the rules. See *Texas v. United States,* —— U.S. ——, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998).

Finally, to the extent the Council believes that the regulations fail to provide pre-deprivation hearings at the times (and in the form) the Constitution demands, the claim may be ripe for decision. But because the appellate papers leave us unsure just what this claim entails and how it affects any particular nursing home, it is best to leave to the district court the resolution of the Secretary's ripeness objection to this aspect of the Council's suit.

In sum: the APA-based objection to adoption of the manual is within the district court's jurisdiction and should be addressed on the merits; the vagueness challenge is not ripe for decision and should be dismissed; the due process objection to the timing and structure of opportunities to be heard, and the arguments based on the 1987 statute, may or may not be ripe for decision, and the district court should require the parties to flesh out these claims before deciding which, if any, is justiciable. The judgment is vacated, and the case is remanded for further proceedings consistent with this opinion.