**TOTAL RENAL LABORATORIES, INC., a Florida corporation, d/b/a Dialysis Laboratories, Plaintiff,**

v.

**Donna E. SHALALA, Secretary of Health and Human Services,**

and

**Blue Cross and Blue Shield of Florida, Inc., a Florida non-profit corporation, Defendants.**

No. 1:99–CV–436–CAM.

United States District Court, N.D. Georgia, Atlanta Division.

July 29, 1999.

*see Favors,* 54 F.Supp.2d at 1330 (applying these factors to 21 U.S.C.A. § 841(b)), the

Court in *Jones* ignores those factors.

Randall L. Hughes, Adrienne E. Marting, Powell Goldstein Frazer & Murphy, Atlanta, GA, Margaret M. Manning, phv, James T. Grant, phv, Donald A. Goldman, phv, McDermott Will & Emery, Los Angeles, CA, Patric Hooper, phv, Hooper Lundy & Bookman, Los Angeles, CA, for Plaintiff.

Lori M. Beranek, Office of United States Attorney, Howard Henry Lewis, U.S. Department of Health & Human Services, Office of the General Counsel, Atlanta, GA, for Defendants.

### ORDER

MOYE, District Judge.

The above-styled action is before the court on 1) plaintiff's motion for leave to exceed page limitation [# 11]; 2) plaintiff's request for judicial notice [# 12]; 3) defendants' motion to file under seal their opposition to motion for preliminary injunction and motion to dismiss [# 17]; 4) defendants' motion to file under seal their motion to transfer [# 23]; 5) defendants' motion to dismiss [# 19]; 6) plaintiff's motion for preliminary injunction [# 8]; and 7) defendants' motion to transfer [# 22].

### FACTS

The Medicare program is administered by the Secretary of Health and Human Services (the "Secretary"). 42 U.S.C. § 1395kk. It consists of two parts, Part A ("Hospital Insurance") and Part B ("Voluntary Supplementary Medical Insurance").[1] Generally, a person is eligible for Part A benefits if he has attained the age of 65 and also is eligible for monthly Social Security retirement benefits or is disabled. 42 U.S.C. §§ 426(a) and 1395c; 42 C.F.R. Part 406. Part A pays primarily for covered inpatient hospital and related health care services. 42 U.S.C. §§ 1395d and 1395x(b), 42 C.F.R. Part 409. Part A is funded by taxes assessed on employees and other government appropriations. 42 U.S.C. § 1395i.

Part B is a voluntary program, which provides benefits for enrolled, covered individuals that supplement and extend the benefits provided by the Part A program, and is financed by funds appropriated by the federal government and by premium payments made by enrollees. 42 U.S.C. §§ 1395k, 1395j and 1395x(s), 42 C.F.R. § 410.3. Part B primarily pays for "medical and other health services," which is defined in the Medicare Act to include (among other services) physician services, services incident to physician services, home dialysis supplies and equipment, institutional dialysis services and supplies and diagnostic laboratory tests. 42 U.S.C. §§ 1395k and 1395x(s).

Although Medicare coverage is generally limited to the elderly and disabled, Congress has made special provisions for individuals suffering from end stage renal disease ("ESRD") by relaxing normal eligibility requirements so that virtually everyone suffering from ESRD is eligible for Medicare. 42 U.S.C. § 1395rr(a). Patients with ESRD require dialysis on a regular basis, as well as a number of associated diagnostic laboratory tests. Dialysis services are provided by ESRD facilities, which may be either hospital-based or free-standing (which includes self-dialysis services). 42 U.S.C. § 1395rr(b). Services provided by hospital-based facilities are paid under Part A; services provided by free-standing clinics are covered under Part B.

Payments for services to patients with ESRD have special rules contained in 42 U.S.C. § 1395rr, which include a prospective payment, or a "composite rate," for these services, regardless of whether they are services paid for under Part A or Part B. This rate is sometimes imprecisely re-

---

1. There is now a medicare Part C, which is sometimes referred to as Medicare + Choice. This program is not involved in this litigation.

ferred to as the "Part A Composite Rate," even though it could be payment for a Part B service. The Secretary's regulations provide that the composite rate includes a few listed laboratory tests and "routine diagnostic tests." 42 C.F.R. §§ 410.50, 413.170(a), 413.180(a). Laboratory tests not included in the composite rate are paid for under Part B according to a fee schedule. 42 U.S.C. § 1395l(h). As almost all ESRD patients are covered by the Medicare program, the Medicare program pays for virtually all of the dialysis and associated laboratory services provided in the United States.

Within the Department of Health and Human Services ("HHS"), the Secretary has delegated administration of the Medicare program to the Health Care Financing Administration ("HCFA"). In addition, the Secretary acts through fiscal agents known as "carriers", which have entered into contracts to perform the duties set forth in 42 U.S.C. § 1395u. As statutory agents for the Secretary, carriers, like Blue Cross Blue Shield of Florida ("BCBSF") in the instant case, perform a variety of functions, such as determining whether medical services are covered under the Medicare program, as well as processing and paying valid claims. The carriers also make waiver determinations; that is, they determine whether claims, which would otherwise not be paid, may be paid pursuant to the waiver provisions of 42 U.S.C. § 1395gg.

Another function of the carriers, acting in conjunction with HCFA, is to suspend Medicare payments when there is reliable evidence of an overpayment, fraud or willful misrepresentation. 42 C.F.R. § 405.371(a)(1). During the period of suspension, the carrier and others, including the Office of the Inspector General and the Department of Justice, may determine whether an overpayment exists and whether there was fraud. 42 C.F.R. § 405.372. At the conclusion of the suspension period, the funds are used to satisfy any Medicare overpayment or other obligations to HHS, or returned to the provider. 42 C.F.R. § 405.373(e).

Plaintiff, Total Renal Laboratories, Inc., formerly known as Dialysis Laboratories, ("DLI") furnishes laboratory services pursuant to physicians' orders for Medicare patients throughout the country and specializes in diagnostic laboratory services for patients with ESRD. Plaintiff performs many of the tests for ESRD facilities that are owned by plaintiff's parent, Total Renal Care Holdings, Inc. Until May 1998, defendants reviewed and approved plaintiff's claims for payment for these services and paid plaintiff in due course. Since May 1998, however, defendants have processed and approved plaintiff's claims for payment, but have withheld the amount due plaintiff—which at this point totals more than $10 million.

More specifically, on May 13, 1998, the carrier notified plaintiff that its payments were being suspended due to possible overpayment and a perceived increase in the volume of calcium testing (the "first suspension"). Plaintiff states that it repeatedly sought, but was consistently denied, more specific information concerning the basis for the suspension. Plaintiff then retained counsel and, through counsel, engaged a national consulting firm that worked with plaintiff's staff in an effort to obtain the medical records needed to verify the allowability of each challenged claim from dialysis facilities and physicians, and organize and analyze the information. Plaintiff submitted this information in a "rebuttal" to the carrier and HCFA in August 1998 to demonstrate that defendants' concerns were baseless. Plaintiff states that the carrier failed to respond timely (or at all) to plaintiff's rebuttal statements or requests for rescission of the suspension, despite the regulatory requirement that the carrier do so within 15 days. 42 C.F.R. § 405.375.

On October 1, 1998, shortly before the first suspension was due to expire, the carrier reopened and redetermined plaintiff's claims for the period January 1, 1995 through April 30, 1996 (Defendant's Exhibit 2). The carrier determined that, be-

tween January 1, 1995 and April 30, 1996, plaintiff was overpaid more than $5 million for laboratory tests that should not have been paid by the Medicare program. (Id.). The information released at that time to plaintiff stated that virtually all of the claims were being denied for lack of documentation, apparently without referring to the material in the rebuttal submission. (Alderman Declaration, Exhibit 18, Attachment 1, p. 2). On October 14, 1998, plaintiff filed a request for carrier hearing and the carrier set the case for hearing on June 15, 1999. (Goldman fourth Declaration, ¶ 15). Plaintiff also requested release of the balance of the funds withheld in the first suspension. The carrier did not release any of the suspended funds contending that the amount determined to be overpaid on October 1, 1998, exceeds the amount suspended pursuant to the first suspension through September 13, 1998.

On September 4, 1998, the carrier notified plaintiff that its Medicare payments were being suspended for a second time due to reliable information that the claims submitted involved fraud or misrepresentation (the "second suspension"). (Defendants' Exhibit 1). This notice stated that the second suspension "may last up to 180 days from the date of [the second notice] and may be extended under certain circumstances in accordance with 42 C.F.R. § 405.372(d)." (Alderman Declaration, Exhibit 16). Plaintiff received no notice of any extension as required by 42 C.F.R. § 405.372(d)(2)(ii), and the second suspension period expired on or about March 3, 1999. (Goldman Fourth Declaration, ¶ 6). The carrier has not released any of the more than $10 million withheld in the second suspension. (Goldman Fourth Declaration, ¶ 7).

On May 7, 1999, the carrier issued a notice to plaintiff announcing "extension" of the "current" suspension for another full year (the "third suspension"). (Goldman Fourth Declaration, ¶¶ 8–9; Exhibit 24). This notice stated that the extension is based upon a "determination that Medicare claims [that plaintiff has] filed have resulted in an overpayment and that payments to be made may not be correct." (Goldman Fourth Declaration; Exhibit 24). The carrier has not provided plaintiff with an overpayment determination relating to the period at issue in the second suspension (May 1, 1996 through March 31, 1998). (Goldman Fourth Declaration, ¶ 12). Plaintiff points out that the net result of the three suspensions would be to deprive plaintiff of all Medicare payments for two years, while the carrier's review, which began in late 1996, continues into the year 2000. (Goldman Fourth Declaration, ¶ 13).

Plaintiff also states that, despite its repeated requests since October 1998, the carrier has not released to plaintiff all the evidence in the carrier file. The carrier did not disclose the existence of material described by the carrier as a "re-review" of the claims at issue until April 9, 1999. (Goldman Third Declaration, Exhibit 21). The re-review letter, which was undated and unsigned, referenced, but did not include, many documents critical to an understanding of the carrier's findings. (Goldman Fourth Declaration, ¶ 20).

On April 13, 1999, plaintiff wrote the carrier requesting copies of each exhibit and addendum referenced in the re-review as well as other basic information, such as the identity of its author and the date of its preparation. (Goldman Third Declaration, Exhibit 22). On April 21, 1999, the carrier responded: "[Plaintiff] has been provided the same information that has been presented to the hearing officer. Therefore, [plaintiff] should have sufficient documentation to allow [it] to prepare for the hearing." (Goldman Third Declaration, Exhibit 23). The carrier cited the Medicare Carriers Manual instructions regarding fraud investigations, and the privacy Act, 5 U.S.C. § 552a, as reasons why the carrier would not release to plaintiff the patient medical records upon which the carrier apparently relied in denying the claims at issue for lack of medical necessity or documentation. (Goldman Fourth Declaration, ¶ 23).

By letter dated April 23, 1999, plaintiff requested that the carrier hearing officer direct the carrier to provide plaintiff "all of the information which constituted the basis for its overpayment determination as required by the Medicare Carriers Manual, Sections 12012.2, 12013.1(A), 12017 and 12017(C)." (Goldman Fourth Declaration, ¶ 24, Exhibit 25). Plaintiff presents that it has received very little of this material.

By letter dated May 7, 1999, and in related telephone discussions, the carrier hearing officer informed counsel for plaintiff that she had received from the carrier the re-review with its attachments and exhibits, but that some of them are "not releasable [to plaintiff] due to the Privacy Act." (Goldman Fourth Declaration, ¶ 28, Exhibit 26). By letter dated May 13, 1999, the carrier hearing officer provided plaintiff with a signed and dated version of the "re-review" provided earlier, together with some of the exhibits and addenda thereto. (Goldman Fourth Declaration, ¶ 29). Many exhibits were replaced by sheets describing the nature of the document and a legend indicating that they were not disclosable to plaintiff due to the Privacy Act. In addition, the carrier completely omitted Addendum A, the carrier's summary of the Medicare Part A and Part B billing by plaintiff in its sample, with no reasons stated. (Id.).

In lieu of furnishing copies of the hearing file to plaintiff in advance of the hearing, the hearing officer has proposed to allow plaintiff's counsel to review the hearing file in lieu of a hearing on June 15, 1999, but not copy any of the "non-disclosable" material. Under this proposal, the hearing proper would be conducted in late July 1999. (Goldman Fourth Declaration, ¶ 31). Plaintiff asserts that, given the sheer volume of material that the carrier is obliged to produce, and given the admitted confusion of the carrier reviewers concerning the source of documents in the file, the carrier hearing officer's proposal—that plaintiff take notes regarding, but not copies of, the relevant medical records—is unworkable. (Goldman Fourth Declaration, ¶ 32). At issue in the carrier hearing are more than 2,500 claims for services. (Id.). Plaintiff has the burden of documenting each claim. (Id.). Plaintiff contends that it is not possible to prepare and present such evidence without first reviewing, copying and organizing the documents in the carrier file, and cross-referencing them with the material in plaintiff's files. (Goldman Fourth Declaration, ¶ 35). In response, defendants have intimated that they would be willing to allow plaintiff to make arrangement to copy documents provided that plaintiff is bound by certain protective provisions in a written agreement.[2]

Plaintiff claims that both suspension notices failed to comply with HCFA regulations and policy instructions setting forth the carrier's responsibility to inform the supplier of the grounds for any suspension action in detail sufficient to permit a meaningful rebuttal.[3] Under the Medicare stat-

2. In this regard, defendants have suggested that this court issue a Privacy Act order to which defendants would consent. Defendants have even submitted an example of such an order for the convenience of the court and the parties. The court does not see why the parties cannot consent to such an agreement without the involvement of this court.

3. In their briefs, defendants state that both the suspension and overpayment determinations are based primarily upon tests that were either double billed or medically unnecessary. Defendants present that the carrier has determined that tests were double-billed when they were included in the composite rate payment made to the ESRD facility and billed again to the Medicare program as an independent laboratory service. Defendants point out that had plaintiff wanted payment for these services, plaintiff should have sought it from the ESRD facility.

Defendants also state that tests were found to be medically unnecessary for a variety of reasons. For example, plaintiff allegedly billed some tests more often than the rate presumptively considered to be necessary for ESRD patients, without the necessary information on the claim form that would justify the tests. (Id.). In other cases, the physician allegedly did not order the test. (Id.). Some of the tests were aided by the use of plaintiff's preprinted requisition forms. (Id.).

ute and regulations and fundamental notions of due process, plaintiff claims that it is entitled either to release of the sums withheld or the prompt issuance of carrier re-determinations on the claims purportedly under review. Plaintiff submits that any such determinations must also explain the carrier's basis for changing its original approval and provide the appeal rights set forth in the statute. Plaintiff further claims that defendants' actions in denying plaintiff's access to the carrier file is in violation of the Medicare Carriers Manual.

On February 16, 1999, plaintiff filed the subject action for an injunction and declaratory judgment against defendant Donna E. Shalala, in her official capacity as the Secretary of the United States Department of Health and Human Services,[4] as well as her agents and delegates, including the HCFA[5] and defendant BCBSF, a non-profit corporation that is under contract with the Secretary to serve as a medicare carrier, 42 U.S.C. § 1395u. Plaintiff alleges that defendants violated the Medicare statute, the Secretary's own regulations and procedures and plaintiff's right to procedural due process under the Administrative Procedure Act and Due Process Clause of the Fifth Amendment to the United States Constitution in withholding over $10 million in Medicare payments to plaintiff, rendering an "overpayment determination" and withholding information to which plaintiff is entitled concerning the basis for those suspension and overpayment determination actions.

## LEGAL DISCUSSION

### I. MOTION TO EXCEED PAGE LIMITATION.

The court hereby GRANTS plaintiff's unopposed motion for leave to exceed page limitation [# 11].

### II. REQUEST FOR JUDICIAL NOTICE.

The court hereby GRANTS plaintiff's request for judicial notice [# 12] as unopposed.

### III. MOTIONS TO FILE UNDER SEAL.

The court hereby GRANTS defendants' unopposed motion to file under seal their opposition to motion for preliminary injunction and motion to dismiss [# 17]; and defendants' unopposed motion to file under seal their motion to transfer [# 23].

### IV. MOTION TO DISMISS.

"In appraising the sufficiency of the complaint ... the accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *See also Linder v. Portocarrero*, 963 F.2d 332 (11th Cir.1992). The court must accept the facts pleaded in the complaint as true and construe them in a light favorable to Petitioner. *Quality Foods v. Latin American Agribusiness Development Corp.*, 711 F.2d 989, 994–95 (11th Cir.1983).

Defendants move to dismiss plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) on the ground that this court lacks subject matter jurisdiction. Defendants contend that because plaintiff's lawsuit consists of claims that "arise under" the Medicare Act, plaintiff's lawsuit is controlled by the provisions of the Medicare Act. Defendants further contend that plaintiff has attempted to avoid the remedial scheme set forth in the Medicare Act

---

4. The Secretary is responsible for the administration of the United States Department of Health and Human Services ("HHS") and of the Medicare program established by Title XVIII of the Social Security Act. 42 U.S.C §§ 1301(a)(6), 1395g.

5. The HCFA is the operating component of HHS charged with administration of the Medicare program.

and has not exhausted its administrative remedies thereunder.

In the complaint, plaintiff seeks declaratory and injunctive relief "to determine questions of actual controversy between the parties with respect to the health insurance program established by Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 – 1395fff (1992 and Supp.1998), commonly known as the Medicare program." (Plaintiff's Complaint, p. 1, ¶ 1). Thus, is it undisputed that plaintiff's claims "arise under" the Medicare program.

■ Plaintiff's principal jurisdictional basis for this lawsuit is federal question jurisdiction, 28 U.S.C. § 1331. (Plaintiff's Complaint, p. 4, ¶ 15). However, federal question jurisdiction is not available for claims arising under the Medicare Act. The Medicare Act has adopted certain provisions of Title II of the Social Security Act, including 42 U.S.C. § 405(h). 42 U.S.C. § 1395ii. Section 405(h) provides:

> No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

The exclusive remedial scheme set forth in 42 U.S.C. § 405(h) prevents this court from exercising federal question jurisdiction in this case. *Heckler v. Ringer*, 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984); *American Academy of Dermatology v. DHHS*, 118 F.3d 1495 (11th Cir. 1997).

More specifically, most aspects of the carrier decision, including overpayment determinations and waiver determinations, can be appealed, as long as the amount in controversy requirements are met. The first stage of review is with the carrier's Part B medical review staff; the next stage is a carrier hearing requested within six months of the date of the overpayment or waiver determination, if the amount in controversy exceeds $100. 42 C.F.R.

§ 405.820(a). That decision can be appealed to an administrative law judge ("ALJ") if the amount in controversy is $500 or more, 42 U.S.C. § 1395ff(b)(2)(B); and thereafter (following review, if any, by the Administrative Appeals Judges of the Departmental Appeals Board ("DAB")) to the federal district court if the amount in controversy is $1,000 or more. Id. Plaintiff's allegations clearly reflect that it meets the amount in controversy requirements for this review process.

With respect to October 1, 1998 overpayment determination, once a decision is made by the hearing officer, if plaintiff is not satisfied, it can appeal the overpayment determination to an administrative law judge, the Departmental Appeals Board, and ultimately to federal district court. Like the October 1, 1998 overpayment determination, plaintiff will be entitled to obtain review of any overpayment determination made by the carrier regarding the September 4, 1998 and May 7, 1999 suspended funds, once such determinations are made.

In opposition, plaintiff asserts that it is not seeking a determination by this court of the validity of its claims for Medicare payment at this time. Instead, plaintiff states that it is seeking the court's intervention solely to vindicate its rights under the Due Process Clause, the Medicare statute and regulations, and the Medicare Carriers Manual to reasonable notice and an opportunity to be heard with respect to the following continuing actions of the defendants in direct contravention of applicable law and procedure:

> The withholding by defendants of all Medicare payment to. DLI—recently "extended" to two years—until defendants complete their review of DLI's claims.

> The carrier's alleged refusal to provide DLI access to and copies of the "carrier file" upon which the overpayment determination of October 1, 1998, was based, allegedly preventing DLI

from preparing adequately for the carrier hearing.

To the extent that plaintiff is alleging defects in the suspension and overpayment determination processes, and assuming, without deciding, that plaintiff's complaint stated a colorable constitutional claim that is collateral to a request for benefits, jurisdiction may exist under the Medicare Act, 42 U.S.C. § 1395ff (which adopts the jurisdiction granted in 42 U.S.C. § 405(g)). *See Mathews v. Eldridge*, 424 U.S. 319, 330–32, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (holding that exhaustion was not necessary where the plaintiff asserted a procedural challenge to the Secretary's denial of a pretermination hearing, a claim that was wholly "collateral" to his claim for benefits, and where he made a colorable showing that his injury could not be remedied by the retroactive payment of benefits after exhaustion of his administrative remedies). However, jurisdiction under the Medicare Act exists only in the district where the supplier laboratory has its principal place of business. 42 U.S.C. § 405(g). In this case, that district is the Middle District of Florida.

Issues other than serious constitutional deprivations (e.g., allegations that policies were not followed) must await exhaustion of administrative remedies. The Eleventh Circuit Court of Appeals in *American Academy of Dermatology* explained that the Supreme Court in *Ringer* "explicitly rejected the argument that plaintiffs may circumvent presentment and exhaustion and gain direct access to federal court 'simply' because a claim somehow can be construed as 'procedural' [in nature]." *American Academy of Dermatology*, 118 F.3d at 1500. "[T]he inquiry in determining whether § 405(h) bars federal-question jurisdiction must be whether the claim 'arises under' the Act, not whether it lends itself to a 'substantive' rather than a 'procedural' label." *Ringer*, 466 U.S. at 602, 104 S.Ct. 2013. *See also Mathews*, 424 U.S. at 327, 96 S.Ct. 893 (recognizing that federal-question jurisdiction is barred by 42 U.S.C. § 405(h) even in a case where claimant is challenging the administrative procedures used to terminate welfare benefits). As the Supreme Court noted in *Ringer*:

> In the best of all worlds, immediate judicial access for all of these parties might be desirable. But Congress, in § 405(g) and § 405(h) struck a different balance, refusing declaratory relief and requiring that administrative remedies be exhausted before judicial review takes place. Congress must have felt that cases of individual hardship resulting from delays in the administrative process had to be balanced against the potential for overly casual or premature judicial intervention in an administrative system that processes literally millions of claims every year.

*Id.* at 627, 104 S.Ct. 2013.

The Supreme Court has construed the "claims arising under" language quite broadly. *See e.g., Weinberger v. Salfi*, 422 U.S. 749, 760–61, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). In *Ringer*, the plaintiffs' claim challenged the Secretary's "alleged failure to comply with the rulemaking requirements ... in issuing the instructions and the rule." *Ringer*, 466 U.S. at 614, 104 S.Ct. 2013. The Supreme Court held that though [a]rguably [the plaintiffs] do assert objections to the Secretary's 'procedure' for reaching her decision, ... [because the claim was] " 'inextricably intertwined' with [their] claims for benefits, ... it makes no sense to construe the claim[ ] as anything more than, at bottom, a claim that they should be paid." *Id.* Similarly, here the court concludes, and as plaintiff plainly recognized in its complaint, plaintiff's claims "arise under" the Medicare Act. *See also Ancillary Affiliated Health Services, Inc. v. Shalala*, 165 F.3d 1069, 1070–71 (7th Cir.1998) (holding that the plaintiff's claim that the Secretary failed to issue a notice required by her regulations was not "wholly collateral" to a claim for reimbursement under the Medicare Act and that the court lacked jurisdiction to consider whether a temporary suspension of Medicare payments should be lifted or en-

joined); *Homewood Professional Care Center Ltd. v. Heckler,* 764 F.2d 1242, 1249 (7th Cir.1985) (holding that the plaintiff's "claim that the individual defendants wrongfully continue to withhold funds due them is, in effect, a claim for payment under the [Medicare] Act.").

Thus, this court lacks subject matter jurisdiction.

█ Plaintiff also requests a writ of mandamus, pursuant to 28 U.S.C. § 1361. Defendants contend that mandamus jurisdiction is precluded to the same extent as federal question jurisdiction by 42 U.S.C. § 405(h). As discussed in detail above, 42 U.S.C. § 405(h) provides that "no findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided." The logical reading of this provision leads to the conclusion that the decision of the Secretary to suspend payments cannot be reviewed outside the confines of § 405.

In addition, defendants point out the third sentence of § 405(h) which provides in pertinent part "no action shall be brought ... under section 1331 or 1346 of Title 28." Defendants explain that, as originally enacted in 1939, the Medicare Act provided that no action to recover on any claim arising under Title II of the Social Security Act could be brought "under section 24 of the Judicial Code" (53 Stat. 1371), which was codified at 28 U.S.C. § 41 (Supp. V 41), and, at that time, contained all of the general grants of jurisdiction to the district court. *See* 28 U.S.C. § 41 (Supp.v.1934); *Weinberger,* 422 U.S. at 756, n. 3, 95 S.Ct. 2457 (1975). When the mandamus statute was enacted in 1962, Congress placed it in Chapter 85 of Title 28 (see Act of October 5, 1962, Pub.L. No. 87–748, 76 Stat. 744), which is the successor to the prior 28 U.S.C. § 41. The 1962 amendment thereby placed the mandamus statute within the scope of the jurisdictional bar in the third sentence of 42 U.S.C § 405(h).

In the 1976 version of the United States Code, the codifiers revised the third sentence of 42 U.S.C. § 405(h) to refer to "sections 1331 or 1346 of Title 28", instead of "section 24 of the Judicial Code." That change was intended to reflect the 1948 revision of Title 28 (see 42 U.S.C. § 405 note, at 518 (1976)) and, because it was not enacted by Congress, it had no legal effect. *North Dakota v. United States,* 460 U.S. 300, 311, n. 13, 103 S.Ct. 1095, 75 L.Ed.2d 77 (1983). In *Ringer,* which was decided in May 1984, the Court reserved the question of whether the third sentence of 405(h), as then in effect, foreclosed mandamus jurisdiction. *See* 466 U.S. at 616, 104 S.Ct. 2013.

Later in 1984, in § 2663(a)(4)(D) of the Deficit Reduction Act of 1984 (Pub.L. No. 98–369, 98 Stat. 1162), Congress amended section 405(h) to refer to "section 1331 or 1346 of Title 28," instead of "section 24 of the Judicial Code." That amendment was one of a number of "technical corrections" that did not "change or affect any right, liability, status, or interpretation which existed (under the provisions of law involved) before that date." 98 Stat. 1160, 1171–72, *see also* H.R.Conf.Rep. No. 861, 98th Cong., 2d Sess. 1413–1415 (1984). Thus, defendants argue and the court agrees that there has been no substantive change in the law since 1962, when the mandamus statute was placed within the scope of § 405(h).

█ Moreover, even if mandamus jurisdiction is not precluded, plaintiff has failed to satisfy the two requirements for mandamus relief: 1) it has exhausted all other avenues of relief and 2) the defendants owe it a clear nondiscretionary duty. *Ringer,* 466 U.S. at 616, 104 S.Ct. 2013. With respect to the first requirement, for the same reasons set forth above, plaintiff has not exhausted its avenues of review under § 405(g). *See Michigan Association of Homes and Services for the Aging, Inc. v. Shalala,* 127 F.3d 496, 503 (6th Cir.1997) (holding that the mandamus exhaustion requirement is synonymous with the exhaustion requirement of § 405(h)).

With respect to the second requirement, plaintiff argues that the carrier's refusal to release the carrier file and defendants' alleged failure to follow the specific requirements of notice and opportunity to be heard in the suspension regulations and Medicare Carriers Manual do not involve any discretionary function on the part of defendants because the Medicare Carriers Manual sets forth clearly what must be developed and maintained by the carrier in the file and directs the carrier to provide that file to the hearing officer and the supplier. Defendants point out, however, many of these procedures involve discretionary functions. For example, the Medicare Carrier's Manual instructs the carrier that notice of a fraud suspension should contain enough information to allow the provider to prepare a rebuttal but not enough information to undermine a potential fraud case. Medicare Carrier's Manual, § 14004.3. This is clearly a discretionary function. Any pre-hearing determinations made by hearing officers (and presumably administrative law judges) for upcoming hearings are also clearly discretionary. Thus, plaintiff's request for mandamus relief must be denied.

Therefore, the court hereby GRANTS defendants' motion to dismiss for lack of jurisdiction.[6]

## V. *REMAINING MOTIONS.*

In view of the rulings above, the court hereby DENIES the remaining motions as MOOT.

### *CONCLUSION*

Therefore, the court hereby 1) GRANTS plaintiff's motion for leave to exceed page limitation [# 11] as unopposed; 2) GRANTS plaintiff's request for judicial notice [# 12] as unopposed; 3) GRANTS defendants' motion to file under seal their opposition to motion for preliminary in-

junction and motion to dismiss [# 17] as unopposed; 4) GRANTS defendants' motion to file under seal their motion to transfer [# 23] as unopposed; 5) GRANTS defendants' motion to dismiss [# 19]; 6) DENIES plaintiff's motion for preliminary injunction [# 8] as MOOT; and 7) DENIES defendants' motion to transfer [# 22] as MOOT.

The Clerk of the court is hereby DIRECTED to CLOSE this case.

---

6. Plaintiff also appears to have requested a writ in aid of jurisdiction under the All Writs Act, 28 U.S.C. § 1651. This statute allows a district court to issue a writ "necessary or appropriate in aid of [its] jurisdiction and agreeable to the usages and principles of law." *Id.* However, plaintiff has failed to explain how any of its requested relief will aid the court's jurisdiction of this matter. Therefore, the court must dismiss plaintiff's request.